**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**ARMANDO COLON,**

                              **Petitioner,**

      **vs.**                                                  **9:12-CV-321
                                                                      (MAD/ATB)**

**SUPERINTENDENT,
WENDE CORRECTIONAL FACILITY,**

                                **Respondent.**
_____

**APPEARANCES:**                                          **OF COUNSEL:**

**ARMANDO COLON
82-A-3397**
Wende Correctional Facility
P.O. Box 1187
Alden, New York 14004
Petitioner *pro se*


**OFFICE OF THE NEW YORK**               **MICHELLE MAEROV, AAG**
**STATE ATTORNEY GENERAL**
120 Broadway
New York, New York 10271
Attorneys for Respondent


**MAE A. D'AGOSTINO, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Armando Colon ("Petitioner") has filed this *pro se* petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. *See* Dkt. No. 5. Petitioner challenges the constitutionality of a decision rendered in a prison disciplinary hearing held at the Great Meadow Correctional Facility on November 16, 1995. *See id*. at 2. His administrative appeal of this decision was denied in 1996, and the Appellate Division, Third Department denied his Petition for a Writ of Mandamus

on December 4, 1997. *See Colon v. Goord*, 245 A.D.2d 582 (3d Dept. 1997). Petitioner did not file his petition for habeas corpus relief until February 24, 2012. In a Report and Recommendation, Magistrate Judge Andrew T. Baxter recommended dismissal of Petitioner's petition as barred by the applicable one-year statute of limitations. *See* Dkt. No. 11.

Currently before this Court are Petitioner's objections to the Report and Recommendation, in which he objects to Magistrate Judge Baxter's recommendations on the following grounds: (1) the petition is not untimely; and (2) Magistrate Judge Baxter did not fully consider Petitioner's actual innocence claims.[1] *See* Dkt. No. 20 at 1. This Court finds that habeas relief is inappropriate because Petitioner is currently serving a sentence of 25 years to life, thus the disciplinary action had no impact on the fact of his conviction or the duration of his sentence. Moreover, this Court also finds that the petition is untimely and Petitioner is not entitled to equitable tolling based on a finding of actually innocence. Therefore, the petition is dismissed.

## II. BACKGROUND

In 1995, Petitioner was charged with conspiring to escape and smuggling while he was an inmate at Great Meadow Correctional Facility. *See Colon*, 245 A.D.2d at 582. Following a disciplinary hearing on November 16, 1995, Petitioner was found guilty of both charges. *See* Dkt. No. 20-1 at 4. He was sentenced to 1,825 days in the Special Housing Unit ("SHU") and 60 months loss of good time credits. *See id.*

---

[1] Although Petitioner labeled his objections to the Report and Recommendation as a "Motion for Reconsideration Pursuant to Fed. R. Civ. P. 60(b)," they are, in fact objections to Magistrate Judge Baxter's recommendations pursuant to Fed. R. Civ. P. 72(b)(2). Fed. R. Civ. P. 60(b) provides relief from a final judgment or order, which has not been entered in this case.

Petitioner filed an administrative appeal, which was denied on January 4, 1996. *See id*. at 9. Petitioner then filed a petition for a Writ of Mandamus in New York State Supreme Court, Albany County, pursuant to Article 78 of the N.Y.C.P.L.R., which was transferred to the Appellate Division, Third Department. *See Colon*, 245 A.D.2d at 582. On December 4, 1997, the Appellate Division denied the petition. *See id*. On July 30, 1998, Petitioner filed a federal civil rights lawsuit pursuant to 42 U.S.C. § 1983 alleging damages from the disciplinary action. *See Colon v. Goord*, No. 9:98-CV-1302, 2009 WL 890554 (N.D.N.Y. Mar. 30, 2009). On March 30, 2009, the court dismissed the lawsuit as untimely. *See id*.

Petitioner filed this application for habeas corpus relief on February 24, 2012. *See* Dkt. No. 1. Petitioner originally brought this action pursuant to 28 U.S.C. § 2241. *See* Dkt. No. 1 at 5; Dkt. No 1-2. On April 26, 2012, the court found that the petition should have been brought under 28 U.S.C. § 2254. *See* Dkt. No. 3 at 2-3; *see also Jenkins v. Duncan*, No. 9:02-CV-0673, 2003 WL 22139796, *3 & n.3 (N.D.N.Y. Sept. 16, 2003) (holding that a petition challenging a disposition rendered at a state disciplinary hearing is "considered under, and is necessarily subject to, the laws governing habeas petitions brought under 28 U.S.C. § 2254"). Moreover, the petition as written did not meet the requirements of Fed. R. Civ. P. 8(a)(2). *See id*. The court denied Petitioner's request for *in forma pauperis* status, directed him to pay the filing fee, and ordered him to file an amended petition if he wished the action to proceed. *See id*. at 3-4.

On June 6, 2012, Petitioner filed his amended petition, raising the following issues with respect to the 1995 disciplinary proceeding: (1) his employee assistant was ineffective because she failed to interview the requested witnesses and did not provide important evidence to him; (2) he was denied his right to due process when the hearing officer failed to ascertain why Petitioner's witness refused to testify and failed to provide him with exculpatory evidence; and (3) the hearing

officer denied him due process when he failed to properly ascertain the credibility of the confidential informant. *See* Dkt. No. 5 at 9-10.

On June 25, 2012, the Court ordered service of the petition and requested a limited answer from the respondent. *See* Dkt. No. 6. In this order, the Court discussed the one-year statute of limitations for habeas corpus petitions and instructed Respondent to limit his response to the timeliness issue. *See id*. at 4. Petitioner was given the opportunity to file a reply memorandum addressing Respondent's arguments, as well as raising any arguments in support of equitable tolling or in support of a claim of actual innocence. *See id*.

On September 17, 2012, Petitioner filed a memorandum in support of his petition, arguing that habeas relief is warranted upon a finding of actual innocence. *See* Dkt. No. 10 at 5. Petitioner claims that the evidence presented at the disciplinary hearing was insufficient to support the hearing officer's decision. *See id*. Petitioner contends that the hearing officer based his decision solely on a note allegedly written by John Maier, a fellow inmate who did not testify at trial, and who may have had an improper interest in implicating Petitioner. *See id*. at 4-6.

John Maier, Jeffrey Emery, and Christopher Irequi were inmates who were also involved with the conspiracy. *See* Dkt. No 20-1 at 4. Initially, Maier agreed to testify at Petitioner's hearing, however, during the hearing, Petitioner learned that Maier refused to testify. *See id*. at 5. Petitioner was not informed of the reason for Maier's refusal to testify, and the hearing officer did not personally ascertain the reason. *See id*. At the hearing, confidential information from Maier was relayed to the hearing officer by Sergeant Kevin Smith. *See id*. at 6. The hearing officer never interviewed Maier personally. *See id*. According to Sergeant Smith, Maier stated that cell bars were cut on three cells. *See id*. at 6. Based on this information, corrections officers found cell bars cut in Emery's, Irequi's, and Maier's cells, as well as cut gallery and window bars. *See*

4

*id*. They did not, however, find that any of the bars in Petitioner's cell were cut. *See id*. Maier further stated that Petitioner smuggled the blades used to cut the bars into the facility and that Petitioner told other inmates that an outside person would mail him the blades used for the escape plot. *See id*. at 7. Maier also stated that because of a disagreement between himself and Petitioner, the three others then construed their own plan to escape excluding Petitioner. *See id*. There was no other physical evidence linking Petitioner to the blades, no blades were found on Petitioner's person, and no packages that potentially contained blades were linked to Petitioner. *See id*.

At the hearing, Irequi testified that he himself made the arrangements to have the blades mailed to Great Meadow, addressed to inmate Burrs, and that Petitioner was not involved in the smuggling plan. *See id*. Emery also testified that the escape plan only involved Emery, Irequi, and Maier. *See id*. Additionally, Petitioner offered the testimony of Thomas O'Sullivan, a fellow inmate who was aware of racial tension between Maier and Petitioner. *See id*. at 8. O'Sullivan described a conversation he had with Maier just a day or two before the incident in which Maier stated the following in reference to his dislike for Petitioner: "now don't worry about it, in a couple days I'm gonna fix his spic ass." *See id*.

Petitioner contends that the hearing officer did not test Maier's credibility and there is no proof that Maier actually wrote the note that was admitted into evidence. *See* Dkt. No. 10 at 4-6. Petitioner further contends that because Maier was a coconspirator who was also charged in the escape plot, the hearing officer should have considered Maier's own personal interest in implicating Petitioner. *See id*. at 5. Petitioner asserts that the hearing officer's failure to question Maier's credibility, the overall insufficiency of the evidence, and the failure to authenticate the note containing Maier's version of events violated his due process right to a fair and impartial

5

hearing officer and are sufficient to support a claim of "actual innocence," which would allow this Court to hear the merits of Petitioner's claim notwithstanding an otherwise applicable procedural bar. *See id.* at 6.

In 2001, inmates Edwin Hannon and Robert Cahill prepared affidavits in support of Petitioner's claim of actual innocence. *See* Dkt. No. 20-1 at 2-3. Hannon states that he refused to testify at the administrative hearing because he feared retaliation by inmate Maier. *See id.* at 2. Hannon states that Maier bragged to him about his plans to "get even" with Petitioner as well as how prison guards at Great Meadow shared Maier's white supremacist views and disliked Petitioner. *See id.* Hannon's affidavit is dated January 9, 2001. *See id.* Cahill's affidavit, which is dated February 8, 2001, states that Maier was well known within the facility for harboring racist views against "blacks and latinos." *See id.* at 3. Cahill states that Maier also informed him that "he hated that 'spic' Armando Colon . . . because he told inmates he [Maier] was a snitch and that [he] will one day get even with Armando." *See id.*

While the affidavits were prepared in 2001, Petitioner acknowledges that the information provided by inmates Cahill and Hannon was provided to the hearing officer prior to the hearing. *See* Dkt. No. 20 at 4. Additionally, Petitioner did not proffer this evidence in support of his claim of actual innocence until making his objections to Magistrate Judge Baxter's Report and Recommendation. *See id.*

### III. DISCUSSION

**A.    Fact or Duration of Confinement**

Petitioner challenges his sentence to confinement in the SHU, as well as his loss of good time credit. *See* Dkt. No. 5 at 10. To obtain a federal writ of habeas corpus, a state prisoner must

6

show that he or she is in custody in violation of the Constitution or laws of the United States. *See* 28 U.S.C. § 2254(a). Challenges to the validity of prison administrative actions that affect the fact or length of the prisoner's confinement are properly brought under 28 U.S.C. § 2254. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

In the present matter, because Petitioner is serving a sentence with a maximum term of life in prison, he is not eligible to earn good time credit. *See* N.Y.C.L. § 803(1)(a) ("Every [inmate] . . . except a person serving a sentence with a maximum term of life imprisonment, may receive time allowance against the term or maximum term of his . . . sentence imposed by the court"). Therefore, the hearing officer's recommendation of the loss of good time credit, although upheld on appeal, was essentially meaningless. *See Gomez v. Kaplan*, No. 94 Civ. 3292, 2000 WL 1458804, *12 (S.D.N.Y. Sept. 19, 2000). Since Petitioner was not eligible to receive good time credit in the first place, he cannot now challenge the hearing officer's decision to take away good time credit.

Moreover, a habeas proceeding is not appropriate for Petitioner to challenge his confinement to the SHU. Petitioner is currently serving a sentence with a maximum term of life in prison and the length of his confinement is not and cannot be implicated by the outcome of this action. *See id*. at *12; *see also Parra v. Fischer*, 2012 WL 3069952, *3 (W.D.N.Y. July 27, 2012). Thus, Petitioner's action "becomes a pure conditions of confinement case by default," which is only actionable, if at all, under 42 U.S.C. § 1983. *See Gomez*, 2000 WL 1458804 at *12; *see also Parra*, 2012 WL 3069952 at *3; *Peralta v. Vasquez*, 467 F.3d 98, 100 (2d Cir. 2006). Petitioner has already raised these claims in his 42 U.S.C. § 1983 proceeding, which was dismissed as barred by the applicable statute of limitations. *See Colon*, No. 9:98-CV-1302.

Consequently, because it is inappropriate to challenge the conditions of confinement in a petition for habeas relief, the Court lacks subject matter jurisdiction and, therefore, the petition is dismissed.

## B. Statute of Limitations

### *1. Petition was not timely filed within AEDPA's one-year statute of limitations period.*

Although the Court has determined that Petitioner's action must be dismissed on jurisdictional grounds, in the alternative, the Court finds that this action is procedurally defaulted. Congress' enactment in 1996 of the Antiterrorism and Effective Death Penalty ("AEDPA") brought about significant changes to the prisoner litigation landscape. One of those changes was the institution of a one-year statute of limitations applicable to habeas petitions filed after April 24, 1996. *See* 28 U.S.C. § 2244(d). The AEDPA established four possible triggering dates for the one-year habeas limitations period. *See id*. Specifically, AEDPA sets forth that

> [A] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run the latest of -
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the

8

> exercise of due diligence.

28 U.S.C. § 2244(d)(1); *Cook v. New York State Div. of Parole*, 321 F.3d 274, 279-80 (2d Cir. 2003). As the Supreme Court observed in *Duncan v. Walker*, 533 U.S. 167 (2001), this statute of limitations "reduces the potential for delay on the road to finality by restricting the time that a prospective federal habeas petitioner has in which to seek federal habeas review." *Duncan*, 533 U.S. at 179; *see also Strauss v. Yelich*, No. 09-CV-0341, 2010 WL 1972781, *3 (N.D.N.Y. May 17, 2010) (quoting *Duncan*, 533 U.S. at 179).

The AEDPA's statute of limitations contains a tolling provision which can serve to mitigate the potential harshness of the one-year filing requirement. *See* 28 U.S.C. § 2244(d)(2). This provision

> balances the interests served by the exhaustion requirement and the limitation period. Section 2244(d)(2) promotes the exhaustion of state remedies by protecting a state prisoner's ability to later apply for federal habeas relief while state remedies are being pursued. At the same time, the provision limits the harm to the interest in finality by according tolling effect only to properly filed application[s] . . . .

*Pace v. DiGuglielmo*, 544 U.S. 408, 427 (2005) (quoting *Duncan*, 533 U.S. at 179-80). It is well-settled, however, that this savings provision only tolls the statute of limitations during the pendency of a properly-filed state court proceeding; it does not "reset" the one-year limitations period. *See State v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000); *Duell v. Conway*, No. 9:07-CV-1321, 2010 WL 2695641, *4 (N.D.N.Y. May 6, 2010) (citation omitted).

Petitioner was found guilty of misconduct on November 16, 1995 and does not dispute that he became aware of the adverse disciplinary decision on the date that it was issued. *See* Dkt.

9

No. 5 at 1, Dkt. 8-1 at 6. His challenge to that decision was denied on January 4, 1996.[2] *See id*. at 2. Thus, to comply with the AEDPA one-year statute of limitations, his habeas corpus petition would have had to have been filed no later than April 24, 1997— or one year after the enactment of the AEDPA.[3] *See* Dkt. No. 6 at 4; *see also Jones v. Smith*, No. 09 CIV. 8437, 2011 WL 2693536, *4 (S.D.N.Y. June 30, 2011) (citing *Ross v. Artuz*, 150 F.3d 97, 102-103 (2d Cir. 1998)). However, Petitioner did not sign his original petition until February 16, 2012, nearly fifteen years after the statute of limitations expired. *See* Dkt. No. 1 at 5.

### *2. Equitable tolling is not available.*

A habeas action that might otherwise be subject to dismissal in light of the AEDPA's statute of limitations might be salvaged by invoking equitable tolling. *See Pace*, 544 U.S. at 418. In order to warrant equitable tolling, a petitioner must show "'(1) that he has been pursuing his rights diligently[;] and (2) that some extraordinary circumstance stood in his way' and prevented timely filing" of the habeas petition. *Holland v. Florida*, ___ U.S. ___, 130 S. Ct. 2549, 2562 (2010) (quoting *Pace*, 544 U.S. at 418). Whether a circumstance is extraordinary depends not on

---

[2] The Second Circuit has not yet addressed whether CPLR Article 78 proceedings challenging administrative decisions toll the AEDPA limitations period. *See Collins v. Ercole*, 667 F.3d 247, 251-52 & nn.6-7 (2d Cir. 2012), *petition for cert. filed*, No. 11-10379 (May 14, 2012). Other circuits, however, have held that exhaustion of prison grievance procedures tolls the one-year period. *See, e.g. Redd. v. McGrath*, 343 F.3d 1077, 1084 (9th Cir. 2003); *Kimbrell v. Cockrell*, 311 F.3d 361, 363-364 (5th Cir. 2002). In this case, Petitioner's administrative appeal was denied on December 4, 1997. *See Colon*, 245 A.D.2d 582. Thus, even if the limitations period had been tolled until that date, Petitioner would have had to file his habeas petition by December 4, 1998 to comply with the AEDPA one-year statute of limitations. Therefore, even if tolling were available, the petition is still untimely because it was not filed until 2012.

[3] For causes of action accruing before the effective date of AEDPA, including convictions that became final before April 24, 1996, a one year grace period was implemented immediately allowing habeas petitioners to file up until April 24, 1997, or one year after AEDPA's enactment on April 24, 1996. *See Ross v. Artuz*, 150 F.3d at 102-103.

10

"how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle is for the petitioner endeavoring to comply with AEDPA's limitations period." *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008).

Here, Petitioner has offered no arguments in support of invoking equitable tolling. While he acknowledges that his petition may be untimely, he offers no explanation for his delay in filing the petition before this Court. *See* Dkt. No 10 at 4. Instead, Petitioner has focused his amended habeas petition on the issue of actual innocence. *See id*.

### 3. Petitioner's actual innocence claim was not pursued diligently and does not present "new evidence" that was not considered by the hearing officer.

Even where a petition is determined to be untimely, the Second Circuit has determined that courts should consider a claim of actual innocence as a basis for excusing a late filing under the AEDPA. *See Rivas v. Fischer*, 687 F.3d 514, 548 (2d Cir. 2012); *see also Friedman v. Rehal*, 618 F.3d 142, 152 (2d Cir. 2010) (citation omitted); *McCoy v. Bisceglia*, No. 10 CIV. 8707, 2012 WL 761725, *1 (S.D.N.Y. Mar. 8, 2012) (citations omitted). If a petitioner satisfies the actual-innocence standard articulated in *Schlup v. Delo*, 513 U.S. 298 (1995), the claim of innocence may be used as a "gateway" for excusing the procedural default, and the reviewing court may hear the substantive claims on the merits, notwithstanding an otherwise unexcused delay in filing the habeas petition. *See Rivas*, 687 F.3d at 540.

As the Second Circuit articulated in *Rivas*, a petitioner seeking to overcome a procedural default with a claim of actual innocence must

> advance both a legitimate constitutional claim and a credible and compelling claim of actual innocence. It is the combination of the two claims — that the petitioner is likely innocent and that his conviction was likely the result of nonharmless constitutional error — that permits a habeas court to review the petition

11

> notwithstanding procedural obstacles in order to avoid a
> miscarriage of justice.

*Id*. at 540-541 (citing *Schlup*, 513 U.S. at 316, 115 S.Ct. 851). Raising a claim of actual innocence in a habeas petition will not result in vacating the conviction on the grounds of innocence, but rather, allows the petitioner to pursue his accompanying constitutional claims notwithstanding an otherwise applicable constitutional bar. *See Schlup*, 513 U.S. at 316.

A petitioner seeking passage through the *Schlup* gateway has "less of a burden" than a petitioner advancing a freestanding substantive claim of innocence. *See id*. To be successful on a freestanding substantive claim of innocence, "the evidence of innocence would have . . . to be strong enough to make [the petitioner's] execution 'constitutionally intolerable' even if his conviction was the product of a fair trial." *Id*. In contrast, the gateway petitioner must present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *See id*.

To satisfy this standard, a claim of actual innocence must be both "credible" and "compelling." *House v. Bell*, 547 U.S. 518, 538 (2006). For the claim to be "credible," it must be supported by "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324. For the claim to be "compelling," the petitioner must demonstrate that, "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt — or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." *See House*, 547 U.S. at 538 (internal citations omitted).

While the *Schlup* standard is less burdensome than a freestanding innocence claim, the standard is still "demanding and permits review only in the extraordinary case." *Id*. It is not

necessary for the petitioner to establish their innocence with absolute certainty, however, in order to prevail, the petitioner must introduce credible new evidence that thoroughly undermines the evidence supporting the challenged proceeding. *See id*. at 543; *see also Rivas*, 687 F.3d at 544.

Petitioner's actual innocence claim fails for a number of reasons. Petitioner argues that the evidence considered by the hearing officer was insufficient to support the hearing officer's decision, without offering "new evidence" to undermine the hearing officer's decision. *See* Dkt. No. 5; Dkt. No. 10 at 4-6. In his objections to Magistrate Judge Baxter's Report and Recommendation, Petitioner introduces for the first time in this proceeding the "new" exculpatory evidence in the form of affidavits by inmates Hannon and Cahill. *See* Dkt. No. 20-1 at 2-4. However, Petitioner also states that the hearing officer was aware of the exculpatory statements made by Hannon and Cahill at the time of the administrative hearing. *See* Dkt. No. 20 at 4. If the exculpatory statements were available to the hearing officer at the time of the hearing, they are not "new evidence" for the purposes of an actual innocence claim. *See, e.g., Rivas*, 687 F.3d at 544 (requiring that new evidence not be available to or considered by the trial court). The fact that this information was considered by the hearing officer prevents Petitioner from now offering it as "new evidence" for the purpose of supporting his claim of actual innocence.

Additionally, Petitioner has offered no explanation for his delay in introducing the affidavits of Hannon and Cahill in support of his actual innocence claim. The affidavits were prepared in 2001, however, Petitioner did not proffer them to this Court until April 1, 2013, in his objections to Magistrate Judge Baxter's Report and Recommendation. *See* Dkt. No. 20-1 at 2-3. Petitioner's unexplained delay in proffering this exculpatory evidence shows that Petitioner has not been "pursuing his rights diligently" and precludes this Court from applying equitable tolling to the actual innocence claim. *See Pace*, 544 U.S. at 418; *see also id*. at 419 ("Under long-

13

established principles, petitioner's lack of diligence precludes equity's operation"). Moreover, the delay in offering this "new evidence" undermines its credibility. Consequently, because of Petitioner's undue delay in offering the affidavits of Cahill and Hannon, and the fact that the information provided therein was considered by the hearing officer, Petitioner's actual innocence claim fails to satisfy the *Schulp* standard.

**C.    Certificate of Appealability**

The Court notes that 28 U.S.C. § 2253(c)(1) provides, in relevant part, that, "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from — (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]"[4] 28 U.S.C. § 2553(c)(1). A court may only issue a Certificate of Appealability "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Since Petitioner has failed to make such a showing with regard to any of his claims, the Court declines to issue a Certificate of Appealability in this matter. *See Hohn v. United States*, 524 U.S. 236, 239-40 (1998) (quotation omitted). Further, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

---

[4] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed in such actions "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1).

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, Magistrate Judge Baxter's Report and Recommendation, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Baxter's Report-Recommendation [Dkt. No. 11] is **ADOPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS** that Petitioner's amended petition for a writ of habeas corpus [Dkt. No. 5] is **DENIED** and **DISMISSED;** and the Court further

**ORDERS** that no Certificate of Appealability shall be issued with respect to any of Petitioner's claims; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Respondent's favor and close the case.

**IT IS SO ORDERED.**

Dated: April 25, 2013
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge